# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JESUS ZENDEJAS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 13-1067-KGS |
| VAL ENERGY, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

This matter comes before the court upon Defendant Val Energy's Motion for Summary Judgment (ECF No. 13). In this case, Plaintiff Jesus Zendejas brings a Kansas common-law negligence claim against Defendant Val Energy. Val Energy argues the court should grant summary judgment because Zendejas was a statutory employee of Val Energy at the time of his injuries and is therefore barred from bringing a negligence claim under the exclusive-remedy provision of the Kansas Workers Compensation Act. For the reasons explained below, the court agrees and grants summary judgment in favor of Val Energy.

### I. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[1] A fact is "material" if it is "essential to the proper disposition of the claim."[2] An issue of fact is "genuine" "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue

---

[1] Fed. R. Civ. P. 56(a).

[2] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

either way."[3] The court views the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.[4]

The movant bears the initial burden of establishing the lack of a genuine issue of material fact and the entitlement to a judgment as a matter of law.[5] To meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the claims of the opposing party; instead, the moving party can simply point out the absence of evidence for the other party on an essential element of that party's claim.[6]

If the movant carries this initial burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmovant may not rest on mere allegations or denials of its pleading.[8] Rather, the nonmovant must give "specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] "Conclusory and self-serving affidavits are not sufficient" to show disputed material facts.[10] In addition, the nonmovant cannot rely "on ignorance of facts, on speculation, or

---

[3] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248).

[4] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[5] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

[6] *See Celotex*, 477 U.S. at 323; *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

[7] *Anderson*, 477 U.S. at 256; *see also Adler,* 144 F.3d at 671 n.1 (discussing burden shifting for a motion for summary judgment).

[8] *Anderson*, 477 U.S. at 256.

[9] *Adler,* 144 F.3d at 671.

[10] *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."[11]

## II. Facts

Val Energy is a contract driller of oil and gas wells. The nature of Val Energy's business requires its drilling rigs to be moved from one site to the next every eight to twelve days. Despite this fact, Val Energy has never moved its own rigs and it lacks the specialized equipment to do so. To accomplish this, Val Energy relies on Rainbow Trucking to transport and set up its rigs. Val Energy does not provide Rainbow Trucking with the tools or employees it would need to transport or set up a drilling rig.

On March 4, 2011, Zendejas was injured while working within the scope of his employment as a laborer with Rainbow Trucking, LLC. Zendejas was "working to level"[12] Val Energy's rig, which Rainbow Trucking was transporting to advance a contract between Val Energy and Clear Exploration, Inc. Val Energy had entered into a written contract with Clear Exploration, requiring Val Energy to furnish an oil rig and to drill at the well site location. Rainbow Trucking was not a party to that contract, nor was Rainbow Trucking mentioned in that contract. No written contract formalizing the relationship between Val Energy and Rainbow Trucking has been presented.

While Zendejas contends that no contract exists between Val Energy and Rainbow Trucking, Zendejas admits that "some sort of arrangement was made between Val Energy and

---

[11] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citing *Bryant v. O'Connor*, 848 F.2d 1064, 1067 (10th Cir. 1988)).

[12] Def's Mem. at 3, ECF No. 14. Plaintiff does not controvert this fact.

Rainbow Trucking in which Val Energy requested that Rainbow Trucking move its drilling rig."[13]

Brandi Wyer, the operations manager of Val Energy for the last eight years, testified that there was not a written contract,[14] but said there was a contract.[15] The undisputed evidence demonstrates a clear and consistent history of the two businesses working together. Wyer stated that, to her knowledge, Rainbow Trucking is the only company Val Energy had ever used to move its rigs.[16] Wyer also testified that it is commonplace for an oil driller and a company such as Rainbow Trucking to not have a written contract. No disputes have been raised about the factual accuracy of Wyer's testimony, and Zendejas has not produced evidence suggesting her testimony is inaccurate. In addition, Val Energy produced a written invoice[17] it received from Rainbow Trucking for moving Val Energy's rig at the time of Zendejas' injuries.

Zendejas was paid workers compensation benefits through Rainbow Trucking and its insurer after his accident. Zendejas filed the present common-law negligence action against Val Energy on February 12, 2013. He alleges a "falling chain guard" struck him, because one of Val Energy's employees negligently unhooked it from the rig.

**III.    Discussion**

The Kansas Workers Compensation Act, K.S.A. § 44-501, *et. seq.,* provides injured workers with a means to be compensated for their injuries without having to prove common-law

---

[13] Pl.'s Resp. at 5, ECF No. 15.

[14] Wyer Dep. at 13:7-14:14 (ECF No. 14-1).

[15] *Id.* at 24:13.

[16] *Id.* at 13:11.

[17] Rainbow Trucking Invoice dated March 8, 2011 at 1, ECF No. 14-3.

4

negligence by their employers.[18] The Act provides injured workers a more certain and expeditious recovery, and in exchange, employers receive a more limited and determinate liability through the Act's exclusive-remedy provision.[19] The exclusive-remedy provision, K.S.A. § 44-501(b),[20] provides:

> Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer.

Specifically, "an employer is not liable in tort for any injury where compensation is recoverable under the Kansas Workers Compensation Act."[21] Accordingly, injured workers may not recover damages for common-law negligence claims against any party from whom they could have recovered workers compensation remedies from under the Act, including direct employers and "statutory employers."[22]

The Kansas Workers Compensation Act addresses subcontracting in K.S.A. § 44–503(a), which extends injured workers' remedy to their "statutory employers." "A prime purpose of [this provision] is to give to employees of a contractor who has undertaken to do work which is a part of the trade or business of the principal, such remedy against the principal as would have been

---

[18] *Selle v. Boeing Co.*, 840 P.2d 542, 544 (Kan. App. 1992).

[19] *Id.*

[20] Zendejas cites the amended exclusive-remedy statute, K.S.A. § 44-501b(d), as the applicable rule. However, the amendment came into effect on May 15, 2011, after the date of Zendejas' injury. An exclusive remedy is a substantive right for both the employee and the employer, and such rights cannot be applied retroactively. As a result, the proper statute to evaluate this case is the one in effect at the time of the injury, K.S.A. § 44–501(b). However, this technical distinction is inconsequential because the statutes use identical language and the analysis under either statute would lead to the same result.

[21] *Robinett v. Haskell Co.*, 12 P.3d 411, 414 (Kan. 2000).

[22] *Id.*

5

available if they had been employed directly by the principal."[23] It also prevents "employers from evading liability under the Act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business."[24] These principals are known as the "statutory employers" of the injured workers.[25] In return for the injured workers' broadened remedy against statutory employers, the statutory employers also receive a more limited and determinate liability through the exclusive-remedy provision of the Kansas Workers Compensation Act.[26] Under the exclusive-remedy provision, "[a] statutory employer is immune from common-law suits for damages … even when the injured employee chooses to receive workers compensation benefits from his or her immediate employer rather than the statutory employer because the employee could have recovered compensation from the statutory employer."[27]

Under K.S.A. § 44–503(a), the principal is held liable for injured workers where:

> "any person (in this section referred to as principal) undertakes to execute any work which is a part of the principal's trade or business or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal…"[28]

If there is any doubt, the provisions of the Kansas Workers Compensation Act should be liberally construed to bring employers and employees under the Act to provide its protections impartially

---

[23] *Hanna v. CRA, Inc.*, 409 P.2d 786, 789 (Kan. 1966) (quoting *Hoffman v. Cudahy Packing Co.*, 167 P.2d 613, 616-17 (Kan. 1946)).

[24] *Id.* (quoting *Hoffman*, 167 P.2d at 616-17).

[25] *Wheeler v. Rolling Door Co.*, 109 P.3d 1255, 1259 (Kan. 2005) (quoting *Robinett*, 12 P.3d at 414 (Citations Omitted)).

[26] *Selle*, 840 P.2d at 544.

[27] *Robinett*, 12 P.3d at 415.

[28] K.S.A. § 44-503(a).

to both.²⁹ In order to prevail on an exclusive-remedy defense, Val Energy has the burden to establish a statutory employment relationship between it and Zendejas under the Act.³⁰ Val Energy contends that Zendejas is precluded from bringing his negligence claim against Val Energy because Val Energy was his statutory employer at the time of his injury pursuant to both tests listed under K.S.A. § 44–503(a).

Both parties agree on the scope of Val Energy's contract with Clear Exploration. Rainbow Trucking was transporting Val Energy's rig, as Val Energy promised to do in its contract with Clear Exploration. To determine whether Zendejas was a statutory employee of Val Energy, the court must find (1) that Val Energy contracted with Rainbow Trucking, or if it did not, (2) that Rainbow Trucking performed work as part of Val Energy's business.

### A. An implied-in-fact contract existed between Val Energy and Rainbow Trucking.

Zendejas argues Val Energy did not contract with Rainbow Trucking and no implied contract existed because Val Energy did not exert control over Rainbow Trucking's employees.

"Parties may be bound as firmly by implied contracts as by those expressed in words, oral or written."³¹ A contract implied in fact arises from facts and circumstances showing mutual intent to contract.³² The terms of the contract are inferred from the facts and circumstances of the case, particularly from the conduct of the parties.³³ While normally a question of fact for a jury

---

²⁹ *Selle*, 840 P.2d at 543.

³⁰ *See Wheeler*, 109 P.3d at 1258.

³¹ *In re Langdon's Estate*, 195 P.2d 317, 322 (Kan. 1948).

³² *Mai v. Youtsey*, 646 P.2d 475, 479 (Kan. 1982).

³³ *Atchison Cnty. Farmers Union Co-op Ass'n v. Turnbull*, 736 P.2d 917, 922 (Kan. 1987).

whether an implied contract existed, "when the legally relevant facts are undisputed, the existence and terms of the contract raise questions of law for the court's determination."[34]

Here, the relevant facts are undisputed. The record shows Rainbow Trucking and Val Energy have a long history of working together. Rainbow Trucking would transport and assemble Val Energy's drilling rigs; Rainbow Trucking would provide Val Energy with a written invoice for its work, and then Val Energy paid for the service. According to Wyer, Val Energy has not used any company other than Rainbow Trucking to perform this service. The record shows, without dispute, that it is commonplace in the oil drilling business for the oil driller to not have a written contract for the transport and assembly of its oil rig. The agreement between Val Energy and Rainbow Trucking shows a mutual intent to contract through their continuous service and payment. An agreement between Val Energy and Rainbow Trucking is evident by their conduct. Zendejas even appears to agree. He concedes that "some sort of arrangement was made between Val Energy and Rainbow Trucking."[35]

Zendejas argues that an implied contract only exists in limited situations, where "Plaintiff consented to control."[36] Zendejas cites no legal authority in support of this assertion, which appears to run counter to Kansas case law addressing implied-in-fact contracts. Under this line of cases, the focus is on the parties' mutual intent to contract, including the factual circumstances that would give rise to this sort of arrangement.[37] While one company's control over another company's employees may very well support the notion that an implied-in-fact contract existed,

---

[34] *Unified Sch. Dist. No. 446, Independence, Kan. v. Sandoval*, 286 P.3d 542, 546 (Kan. 2012).

[35] Pl.'s Resp. at 5, ECF No. 15.

[36] *Id.* at 6.

[37] *See, e.g., Mai*, 646 P.2d at 479.

Kansas case law does not impose a requirement that the employees affirmatively consent to this type of control for an implied-in-fact contract to exist.

The record shows a contract implied-in-fact was established between Val Energy and Rainbow Trucking based on their conduct. As a result, Zendejas was performing work that Val Energy "contracted to do for a third party," satisfying one of the tests for statutory employment under K.S.A. § 44-503(a). Consequently, Zendejas was a statutory employee for Val Energy at the time of his injury and is barred from bringing his negligence claim under the Kansas Workers Compensation Act. Although this finding alone is sufficient to grant summary judgment in favor of Val Energy, the court also analyzes below whether Rainbow Trucking was performing work that was part of Val Energy's business such that Zendejas was a statutory employee on this basis as well.

### B. The work performed by Rainbow Trucking was part of Val Energy's business.

Val Energy contends that the work Zendejas was performing for Rainbow Trucking at the time of his injury was a part of Val Energy's business. Zendejas disagrees. He reasons that transportation and assembly of oil rigs is temporary and separate from oil drilling and not something ordinarily done by Val Energy's employees.

In, *Hanna v. CRA, Inc.*, the Kansas Supreme Court set forth two tests for determining whether the work performed is a part of the principal's trade or business: (1) is the work necessarily inherent in and an integral part of the principal's trade or business?; and (2) is the work such that it would ordinarily have been done by the employees of the principal?[38] If either test is satisfied, then the principal is the statutory employer of the injured employee, and the

---

[38] *Hanna*, 409 P.2d at 789.

injured employee's sole remedy against the principal is under the Kansas Workers Compensation Act.[39]

Val Energy cites three Kansas Supreme Court opinions providing guidance as to what constitutes work "inherent and integral" in the business of drilling, operating, and producing oil and gas wells. In *Anderson v. Beardmore*, the court held that it was necessary to separate oil from salt water to produce oil.[40] In *Mays v. Ciba-Geigy Corp.*, the court found that hooking up wells was an integral part of defendant's business of leasing, developing, operating and producing oil and gas properties.[41] Finally, in *Purkable v. Greenland Oil Co.*, the court concluded that the construction of an oil well derrick was a necessary part of the business of drilling an oil well and producing oil.[42]

Val Energy is a contract driller engaged in the business of drilling oil and gas wells. Val Energy had entered into a contract with Clear Exploration to furnish a drilling rig at a specified location. However, Val Energy does not own the equipment necessary to move its own rigs. Val Energy has never moved its own rigs. Without third-party assistance, Val Energy would not be able to fulfill its contractual obligations or maintain its business, because it lacks the equipment and experience to transport its rigs independently. The transportation and set-up work performed by Rainbow Trucking is analogous to the contracted services at issue in the above-cited cases. The undisputed evidence shows that the transportation provided by Rainbow Trucking is "inherent and integral" to Val Energy's business, which satisfies the first *Hanna* test.

---

[39] *Id.*

[40] *Anderson v. Beardmore*, 502 P.2d 799, 802 (Kan. 1972).

[41] *Mays v. Ciba-Geigy Corp.*, 661 P.2d 348, 368 (Kan. 1983).

[42] *Purkable v. Greenland Oil Co.*, 253 P. 219, 221 (Kan. 1927).

The record also shows that Zendejas was performing work that was "a part of" Val Energy's business, satisfying the other test for statutory employment listed under K.S.A. § 44-503(a). Under either test for statutory employment, Zendejas was Val Energy's statutory employee at the time of his injury. As a result, his claim against Val Energy is barred by the exclusive-remedy provision of the Kansas Workers Compensation Act.

### IV. Conclusion

The court concludes that Val Energy is entitled to summary judgment and that Zendejas' negligence claim should be dismissed with prejudice because the exclusive-remedy provision of the Kansas Workers Compensation Act serves as a bar to his claim. Val Energy qualifies as Zendejas' statutory employer under the Act because the uncontested facts demonstrate that an implied-in-fact contract existed between Zendejas' direct employer and Val Energy. As part of this implied-in-fact contract, Zendejas' direct employer performed work that was an inherent and integral part of Val Energy's business, which rendered Zendejas a statutory employee of Val Energy under the terms of the Act and therefore subject to the Act's exclusive-remedy provision.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Val Energy's Motion for Summary Judgment (ECF No. 13) is granted.

**IT IS SO ORDERED.**

Dated this 31st day of March, 2014, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge